IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

_____

| | |
|---|---|
| DOUGLAS SCOTT McALPIN, | Cause No. CV 12-143-M-DLC-JCL |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| LEROY KIRKEGARD, Warden, Montana State Prison; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondent. | |

_____

On August 27, 2012, Petitioner Douglas Scott McAlpin filed this action seeking a writ of habeas corpus under 28 U.S.C. § 2254. He challenges the judgment of conviction entered on March 3, 2011, in Montana's Twenty-First Judicial District Court, Ravalli County, for failure to register as a violent offender. Pet. (doc. 1) at 2 ¶ 2. McAlpin is currently detained in a state pre-release center and is proceeding pro se.

On September 19, 2013, McAlpin submitted a letter that is not relevant to these proceedings. It will be stricken.

1

## I. Preliminary Screening

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.* A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolaus*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). Consideration under Rule 4 "may properly encompass any exhibits attached to the petition, including, but not limited to, transcripts, sentencing records, and copies of state court opinions." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases. "[I]t is the duty of the court to screen out frivolous applications and eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." *Id.*; *see also* 28 U.S.C. § 2243.

## II. Background

In 1992, McAlpin was convicted in Tennessee of aiding and abetting manslaughter, based on an incident in which he and his father stabbed someone. McAlpin received a sentence of eight years and six months. McAlpin states that he

discharged the Tennessee conviction on June 12, 1999. Pet. (doc. 1) at 7 ¶ 13C(i); *see also Anders* Br. at 2, *State v. McAlpin*, No. DA 11-0249 (Mont. Nov. 10, 2011).

In August 2010, McAlpin was charged with two counts of failing to maintain his registration as a violent offender, violations of Mont. Code Ann. §§ 46-23-505 and -507 (2005). The trial court granted McAlpin's motion to dismiss the first count, which alleged failure to maintain registration on or about August 1, 2010. It denied the motion to dismiss the second count, which alleged that McAlpin failed to maintain his registration between April 1, 2006, and December 31, 2006. Reserving his right to appeal the partial denial of his motion to dismiss, McAlpin pled guilty to Count 2. On March 3, 2011, he was sentenced to serve three years in the custody of the Department of Corrections, with all time suspended. Pet. (doc. 1) at 3 ¶¶ 3-4.

McAlpin appealed the trial court's denial of his motion to dismiss Count 2. Appellate counsel filed an *Anders* brief. See Mont. Code Ann. § 46-8-103(2) (2009); *Anders v. California*, 386 U.S. 738, 744-45 (1967). On December 8, 2011, McAlpin filed his own brief in response to the *Anders* brief and counsel's motion to withdraw. On December 27, 2011, the Montana Supreme Court reviewed the record, including McAlpin's own brief, granted counsel's motion to withdraw, and dismissed the appeal as frivolous. Order at 1, *State v. McAlpin*, No. DA 11-0249

3

(Mont. Dec. 27, 2011), *available at* supremecourtdocket.mt.gov (accessed Sept. 18, 2013).

A little over a month later, on February 2, 2012, the State petitioned to revoke McAlpin's suspended sentence. Trial Court Docket (doc. 6-1) at 3 Entry 49. On March 30, 2012, McAlpin moved to withdraw his original guilty plea; he also filed more than one request to remove his counsel and a petition for writ of habeas corpus, all in the trial court. *Id.* at 3-4 Entries 53, 73, 84; Pet. at 4 ¶¶ 11-12.

On August 7, 2012, the trial court denied the motion to withdraw the guilty plea. On September 5, 2012, McAlpin's suspended sentence was revoked. Trial Court Docket (doc. 6-1) at 4 Entries 86, 88-90; Larsen Aff. at 3 ¶ 4, *McAlpin*, No. DA 12-0753 (Mont. Aug. 20. 2013), *available at* http://supremecourtdocket.mt.gov (accessed Sept. 18, 2013).

McAlpin appealed. That appeal is currently pending before the Montana Supreme Court. The opening brief is due on September 27, 2013. See Order at 1, *McAlpin*, No. DA 12-0753 (Mont. Aug. 21, 2013), *available at* http://supremecourtdocket.mt.gov (accessed Sept. 18, 2013).

### III. McAlpin's Claims

McAlpin alleges, first, that his original registration was obtained by coercion and that he "is not a legally registered violent offender in the State of Montana or United States." Pet. at 4 ¶ 13A.

McAlpin's second claim states:

> Petitioner is not a legally convicted person. No basis to prove to the court that this petitioner was in fact legally a registered violent offender in the State of Montana was ever established by the State at the change of plea hearing December 16, 2010; and even the judge questioned (albeit hesitantly) the basis and validity of this petitioner's registration, but quickly proceeded with "conviction" rather than validate registration criteria as it may effect the guilty plea of this petitioner. The knowing "element" of the plea was accepted hesitantly by the State, also.

*Id.* at 5 ¶ 13B (emphases in original).

Third, McAlpin contends that he was not incarcerated when the Montana Legislature enacted the law that ostensibly required him to register. He states that he discharged his Tennessee conviction on June 12, 1999, and notes that he was not charged with the crime of failing to maintain his registration until August 2010, fourteen months beyond the time at which the ten-year registration requirement expired under Montana law. *Id.* at 7 ¶ 13C.

Finally, McAlpin claims he has been maliciously prosecuted and subjected to judicial misconduct because his complaints have not been heard. *Id.* at 8 ¶ 13D.

## IV. Procedural History in This Court

On January 3, 2013, McAlpin was advised that his second claim for relief, which challenges the validity of his guilty plea, appeared to be bound up with his ongoing proceedings in state court, following revocation of his suspended sentence

5

and the denial of his motion to withdraw his guilty plea. Order to Pet'r (doc. 6) at 3. The Court stated:

> If McAlpin intends to continue litigating the validity of his guilty plea in state court, this Court is not going to address the second claim in his federal petition. In that case, McAlpin may withdraw the second claim, or he may withdraw the entire federal petition and refile again later, after he has presented in the state courts *all* the issues he intends to ask the federal court to consider as to the validity of his conviction. *See* 28 U.S.C. § 2244(d); *Rose v. Lundy*, 455 U.S. 509, 520 (1982).
> But, if McAlpin does *not* intend to continue litigating the validity of his conviction or guilty plea in state court, he may say so in response to this Order, and this Court will address all of his claims at this time.
> In either case, McAlpin is advised that he will probably be permitted to file only one federal habeas petition challenging any aspect of his conviction for failure to register as a violent offender. *See* 28 U.S.C. § 2244(b). The revocation of his suspended sentence is a different matter; if this Court reaches the merits of the claims in the federal petition at this time, McAlpin will still be able to challenge the revocation in a separate petition, if he has grounds to do so. But as to his conviction, he must decide whether he wants to proceed in state court or in federal court at this time. He cannot do both.

*Id.* at 3-4. McAlpin was ordered to clarify whether he was currently pursuing or intended to pursue relief in the Montana Supreme Court as to the validity of his guilty plea. *Id.* at 3, 4-5 ¶ 3.

McAlpin responded on January 23, 2013. He unequivocally represented that the pending revocation appeal has nothing to do with the validity of his conviction:

> The current open appeal in the Montana Supreme Court challenges only issues raised in the State's trial court's revocation of suspended sentence hearing. Nothing to do with the Petitioner's illegal conviction; not the validity of Petitioner's unlawful registration as an alleged violent offender; nor the trial judge's erred basis to accept this

6

> Petitioner's illegal guilty plea, which has resulted in Petitioner's illegal and unconstitutional imprisonment; for which relief is sought in this federal court.

Resp. to Order (doc. 8) at 5 (emphasis in original). McAlpin continued:

> [I]t is my hope this Court will prescribe substantial justice in the form of relief granting a reversal of conviction, or any number of justices at this Court's behest. If nothing else, please do not dismiss my claim; but, if the Court finds the grounds I've cited insufficient to grant this Petitioner relief, please grant me leave to amend my petition.

*Id.* at 6. Because McAlpin's request for leave to amend was clear, leave was freely granted. Order Granting Leave to Amend Pet. (doc. 10) at 2.

But, on June 6, 2013, McAlpin responded to that Order, not by amending his petition, but by filing a document titled "Motion to Withdraw '<u>Dated</u>' Request to Amend Habeas Petition (doc. 8 at 6) and Supporting Statement(s)" (citing doc. 8 at 6). The first paragraph of the motion asked the Court to "rule on original writ of habeas corpus . . . filed August 27, 2012." Mot. to Withdraw (doc. 11) at 1. Yet McAlpin also asked the Court to acknowledge "this pro se Petitioner's recent 'Motion to Take Notice of Supplemental Authority,'" *id.*, that is, *Lambert* v. *California*, 355 U.S. 225 (1997).

In sum, McAlpin has been advised that his motion to withdraw his guilty plea is connected with his claims challenging the validity of his conviction and that he will probably be able to file only one federal habeas petition challenging his conviction. He asks the Court to rule on the claims set forth in the original petition

while also taking *Lambert* into account. The Court will do as McAlpin asks. 28 U.S.C. § 2254(b); *Granberry v. Greer*, 481 U.S. 129, 135 n.7 (1987). The motion (doc. 11) to withdraw the previous request to amend the petition (doc. 8 at 6) will be granted. The Court will consider all claims McAlpin has made in this case.

## V. Analysis

McAlpin claims he was convicted for failing to update a registration he did not voluntarily enter into in the first place. But if Montana law required him to register as a violent offender, then it does not matter whether he consented to register in 2005, and his failure to update his registration, even if registration was coerced, could not excuse his failure to comply with the law between April 1 and December 31, 2006. His third claim, too, alleges that he was not required to register at all, and that, even if he was, his prosecution was commenced too late. Finally, if he was required to register, then his prosecution was not malicious and the trial judge did not commit misconduct by allowing the prosecution over his protests. Thus, all his claims are resolved by reviewing Montana law to determine whether McAlpin was required to register in Montana as a violent offender.

### A. Montana Registration Law

McAlpin was convicted of voluntary manslaughter in Tennessee in 1992. In 1995, the Montana Legislature expanded a law requiring sexual offenders to register with law enforcement by requiring registration of violent offenders as well.

*See* Sexual or Violent Offender Registration Act ("SVORA" or "the Act"), Mont. Code Ann. tit. 46, ch. 23, part 5 (1995); 1995 Mont. Laws ch. 407 §§ 4-12. A "violent offender" was defined as "a person who has been convicted of a . . . violent offense." Mont. Code Ann. § 46-23-502(2) (1995). The list of "violent offenses" included "a violation of . . . 45-5-103" – that is, mitigated deliberate homicide – and also "any violation of a law of another state . . . reasonably equivalent to a violation listed." *Id.* § 46-23-502(4).

Under Tennessee law, "[v]oluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Tenn. Code Ann. §§ 39-13-211(a) (1990); *see also id.* Comments of Tenn. Sentencing Commission. Under Montana law, mitigated deliberate homicide is defined as "purposely or knowingly caus[ing] the death of another human being . . . under the influence of extreme mental or emotional stress for which there is reasonable explanation or excuse." *Id.* § 45-5-103(1); *see also id.* Annotator's Note. The offenses are "reasonably equivalent," as are the principles of liability. *See* Tenn. Code Ann. §§ 39-11-402(2) (aider and abettor liable as principal), -13-211 (voluntary manslaughter) (1989); Mont. Code Ann. § 45-2-302(3). Thus, under Montana law, McAlpin was convicted of a violent offense and is a violent offender.

9

In 1997, the Montana Supreme Court held that, because the Legislature declined to adopt a provision that would have called for retroactive application of the Act, the registration requirement did not apply to violent offenders convicted before the date of its enactment. *State v. Whitmer*, 946 P.2d 137, 138 (Mont. 1997) (citing Mont. Code Ann. § 1-2-109).

In 2001, however, the Montana Legislature amended the Act to make it retroactive. Violent offenders who were sentenced or who were under supervision under any state or federal authority after October 1, 1995, are required to register. Part Compiler's Comments, Mont. Code Ann. tit. 46, ch. 23, part 5 (2001); *see also* 2001 Mont. Laws ch. 152 § 1. As noted, McAlpin was not discharged from supervision on the Tennessee conviction until 1999 or later.

Finally, the 2005 version of the Montana Code applied to McAlpin's acts between April 1, 2006, and December 31, 2006. At that time, the law required a violent offender to register and to advise the registration authority within 10 days of any change of address. Mont. Code Ann. §§ 46-23-504(1)(c), -505 (2005); *see also id.* § -504(1) (1995).

Thus, between April 1, 2006, and December 31, 2006, Montana law required McAlpin to register as a violent offender and to advise authorities of any change in his address.

### B. Application to McAlpin's Claims

McAlpin's first and second claims lack merit because Montana law required him to register. He briefly questions the element of "knowingly," Pet. at 5 ¶ 13B(i), but he certainly knew as of 2005 that a registration requirement might apply, *id.* at 4 ¶ 13A(i). He asks the Court to consider *Lambert v. California*, 355 U.S. 225, 228-30 (1957). But *Lambert* does not provide a defense for someone who believes, even in good faith, he is not required to register. It only provides a defense "[w]here a person did not know of the duty to register and where there was no proof of the probability of such knowledge," *id.* at 229, that is, for someone who had no notice of the registration requirement, *id.* at 228. McAlpin clearly had the required notice; the fact he was told in 2005 that he must register as a violent offender is the starting point of each of his claims. His allegation that the trial court and the State accepted his guilty plea "hesitantly" is irrelevant. The guilty plea was accepted, and McAlpin is incorrect when he claims he was not guilty.

McAlpin's third claim lacks merit because state law makes the registration requirement applicable to persons convicted before the registration requirement itself went into effect. There is no cognizable federal constitutional objection to a retroactive registration requirement like the one that applied to McAlpin. Montana's requirements for violent offenders are less onerous than those found non-punitive in *Smith v. Doe*, 538 U.S. 84, 105-06 (2003). *Compare, e.g.*, Mont.

Code Ann. § 46-23-504(6)(a)(iii), -506(2)(a), -508(1)(a), (b)(i) (2011) *with Smith*, 538 U.S. at 90-91. *See also State v. Mount*, 78 P.3d 829, 842 ¶ 101 (Mont. 2003). McAlpin is correct that he was not charged with violating Montana's Act until August 2010, fourteen months after the expiration of Montana's requirement that he maintain registration for ten years following the discharge of the underlying conviction. Pet. at 7 ¶ 13C(i). But the charge alleged he violated the registration requirement in 2006, well before the expiration of ten years after discharge of the conviction, when he was undoubtedly required to register. Prosecution for a felony offense must commence within five years of the offense. Mont. Code Ann. § 45-1-205(2)(a). McAlpin's did.

Finally, because none of McAlpin's claims has merit, his fourth claim, alleging malicious prosecution and judicial misconduct, is likewise meritless. All claims should be denied.

## VI. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

McAlpin's central claim is that he was not and could not be required to register in Montana as a violent offender. He could be and was. The petition presents no open questions and nothing on which reasonable jurists could disagree. A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

**ORDER**

1. McAlpin's motion to withdraw the motion to amend (doc. 11) is GRANTED.

2. McAlpin's letter (doc. 14) is STRICKEN and will not be further considered.

The Court also enters the following:

**RECOMMENDATION**

1. The Petition (doc. 1) should be DENIED for lack of merit.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

# NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION
# AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), McAlpin may file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing. If McAlpin files objections, he must itemize each factual finding to which objection is made and must identify the evidence in the record he relies on to contradict that finding; and he must itemize each recommendation to which objection is made and must set forth the authority he relies on to contradict that recommendation. Failure to assert a relevant fact or argument in objection to this Findings and Recommendation may preclude McAlpin from relying on that fact or argument at a later stage of the proceeding. A district judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

McAlpin must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in

dismissal of his case without notice to him.

DATED this 23rd day of September, 2013.

                                        /s/ Jeremiah C. Lynch
                                       Jeremiah C. Lynch
                                       United States Magistrate Judge